Our next case is 523-0545 Carrington v. Benoit. Mr. Petruska, are you ready for your argument? Yes, sir. Then go right ahead. Good morning. This case is an example of why proceeding pro se may not be the best idea. It's difficult on all parties. It's difficult on the plaintiffs themselves. In this case, went pro se and did not get a favorable result. It's difficult on the judge because the judge is not fully informed of the law by the pro se plaintiff. It's difficult on the other party who sometimes has to deal with, especially when the pro se plaintiff is against a quality attorney. It can be difficult on that attorney because you're dealing with people who aren't following the law, not paying attention, maybe not briefing the law properly. It's all difficult. However, even in that situation, the law has to be followed. And I'm here today to fix a wrong that occurred in this trial court, and I believe it's a matter of law on two substantial issues, where the trial court erred. And whatever the reason for that trial court error, I don't think matters, whether it was the failure of one party to do whatever they did or whatever. However it worked out, I believe that there was no possibility under the law to have a slander of title claim filed against my clients. And I do not believe that this trial should have gone forward with my clients having no claims pending and only having a counterclaim against them. I think that affected the entire trial. But let me address, first of all, the standard of review, because I do believe in this case there is actually somewhat of a question. I believe my opponent and I are basically citing the same cases, too. In a bench-tried case, standard of review is against the manifest weight of the evidence. I cited cases on that, and I believe that I can win under a manifest weight of the evidence. That's because, an example, in the Vazolo v. Boland case, which was a lawsuit contesting the results of an election, they looked at the trial court's decisions and used the against the manifest weight of the evidence, and they found that the trial court ignored uncontradicted and unimpeached testimony in making the findings that they found. In this case, Your Honor, I will tell you it was uncontradicted and unimpeached that my clients had a good faith reason to believe that they could file what was called a private roadway maintenance agreement. So under that standard, I think I can win, and I'll discuss this a little more. But I also believe that this is actually just an error of law. There was no evidence, none, presented at trial that proved malice. None. Therefore, this is just an issue of law. Was a cause of action actually established for slander of title? And therefore, this court should be reviewing my point one under a de novo standard because it's just an issue of law. And now, Wade v. Stork Title and Bellamy v. Zuckenwald. Z-A-R-Y-C-Z-N-Y. Talk about that. In a bench trial case, you can still have something reviewed as a de novo issue if it's just a matter of law. With that said, let's get to the actual facts of the slander of title. What we know in this case is a variety of parties. And my clients bought some land from the Crystals. I'm sorry, no, not from the Crystals. They bought it from the Grunners. And when they bought their land, they also negotiated some rights over it, land owned by Dorothy Crystal. Some of those rights included a 40-foot ingress-egress easement, a 20-foot utility easement, and then there was this private roadway maintenance agreement. The uncontradicted evidence at trial was that all of the parties to that agreement agreed, all of the parties to that agreement agreed that my clients had a right to build a road on Dorothy Crystal's property. How can I say that? An affidavit of Dorothy Crystal was introduced showing that she knew and consented to the candidate's desire to build a road as part of a 40-foot wide ingress-egress easement. That's in the record, 218-219. It's also in exhibit. Part of my opponent's argument is that Dorothy Crystal isn't on the private roadway maintenance agreement. Someone else is, and therefore, it's improper for that reason alone. Absolutely not. My client had reason to believe that she agreed to this because she said she did. But beyond that, the Grunners also testified that they worked with Dorothy Crystal to ensure that she was giving these rights to my clients. So what were these rights? My clients bought a piece of property where there was a roadway going this direction over here, kind of a public roadway, and they didn't have an actual road going in and out to their house directly to the road. And nowadays, just so you know, they've been cut off from that public road. They've now been cut off from that. The only option we have now is this 40-foot wide ingress-egress easement. There's some disputes as to where it is, where it isn't. It doesn't really matter in the end. Is it being used? Yes. In fact, it is part of a dispute in this case. Is there a survey locating where it is? Yes. And does it show the current placement of where it is used? Yes. Actually, that's part of the fight, is that my client put rocks down, trees, and mulch to build his roadway on this ingress-egress. Gravel and gravel? Gravel and gravel. So everyone knows where it is, and everyone knows that it was part of the plot, and everyone agrees. But my point is, that was one thing, but then there's this private roadway maintenance agreement, which, as it turned out, after they negotiated this 40-foot wide ingress-egress easement, the growers thought to themselves, wait a minute, who's going to maintain this road? We don't want to maintain it. So the testimony trial is that we're going to put together this private roadway maintenance agreement, and we're going to put it on the caretakers, make sure they take care of it. At closing, my clients were given that document to sign, and he signed in both spots, because there weren't names, just two spots. He signed in both. Clearly, that's a problem. That's maybe not the proper way to sign a document. But then someone else filed it, and it became part of the record. What we know from the trial of this case is that everyone that was part of the record in the trial court or part of the record on the chain of title of the courthouse. Chain of title of the courthouse, the private roadway maintenance agreement was, in fact, recorded on the property. It was recorded. Yes. What we don't know is who did it. My clients testified at trial. They didn't do it, and they tried to find out who did it. They don't know. So this private roadway maintenance agreement is the central issue in the slander of title. They're claiming the filing of that document was slander on Dorothy Crystal's property, which their client now owns. The key thing, though, is nothing at trial was produced to show that my clients... Can you explain how that slandered their title? What their allegation was? Their allegation is that my client's use of the ingress and egress easement is exceeding the ingress and egress. It's a legal argument saying that he can have the right, but he's got to just go over the grass, basically. So he's exceeding the scope that was granted? They're saying he's exceeding the scope, and especially when he put the rock and trees and everything else down to make it clear. They're saying he has no right to that because that private roadway maintenance agreement is not proper. And to be clear, Dorothy Crystal... I thought there was no dispute about that. I'm not understanding that. Okay. What I'm saying, there's no dispute about a 40-foot ingress and egress easement being recorded on the plat for the subdivision, and my clients have that right. There is a question in the Illinois law whether or not a road is included in an ingress and egress easement. How can it not be? Well, the one case that has actually suggested that it probably is, but they haven't been asked to rule yet. This case, if it goes back, probably might be the first one to say. But my client was basing his right on a road based on the private roadway maintenance agreement to make it clear that he was going to build a road and he was going to have to maintain it. So there's no dispute on the 40-foot easement. There is a dispute whether he could build this road. That's the slander title. I'm not understanding the nature of the dispute. Okay. I don't believe there should be a dispute because the document itself simply confirmed what all the parties agreed to, and it was plotted. And there's no evidence in this case that my client... This is exactly what we agreed to. Everything about this is proper. There's nothing wrong with this. What about the defendant? Did they say that's what was agreed to? No, the only argument by the defendant... She was not a part of that agreement beforehand. No. Ms. Benoit was not a party to it. And the only argument in this case... How many years had intervened between that agreement and their ownership of the property? 2013 agreement. 2012, roughly. I'll let him say when she bought the property. I'm sorry. 2018-19, she bought the property. Ms. Benoit. And in that intervening time, was Karen Kim using that as a road? Yes. Yes. Was he using it as a road when it was purchased by the defendant? He was using it as a road when it was purchased by the defendant, but he did not have the gravel down and he didn't have the trees down yet. So it was a dirt road then? It was just grass that he was using to get in and out. This is a rural area. To his house? To his house, yes. So in the end, Dorothy Crystal, who owned the land, evidence of trial, submitted that the private roadway maintenance grant was correct. The Kennetons testified that this is exactly what everyone agreed to, and the Gruners testified in the deposition this is what we agreed to. There's nothing wrong with that agreement other than it was signed improperly. When he was represented through most of this litigation, I think at one point the lawyer withdrew, at what point did the lawyer withdraw? 2021. Shortly after a hearing with Judge Chappell. And was it that hearing when it was established that he agreed to the fact that he had no failing claims? It was after that, so the original complaint was still unfiled, it was after that that my client filed what was called a first amended claim and a second amended claim. And that's what's led to the discussion about whether or not he had a claim pending at the time. If you want me, I can address that now. Well, okay, yes, I want you to address that. But the other thing I want to know is, was that when he was pro se? Yes, when he filed that he was pro se, absolutely. And then the next thing he filed was also three requests for declaratory judgments, which the court admitted were taking out summary judgment motions, and then they ruled on the summary judgment motions that denied that. But I'll leave the slander title just by saying this. The case law that I've submitted in this case shows uniformly that you must show malice, and I'm talking about even in just the complaint itself. You can even use the op – some of the cases I cited show that you can even use the word malice, and that's not enough. You've got to have evidence. Nothing in this trial transcript, not a single thing, and they didn't cite to a single thing in the trial transcript of evidence of malice. They simply cited to evidence that something's wrong with this private roadway manuscript. And that's what the $46,000-some-odd judgment was for? It's for the attorney's fees for that. Oh, just attorney fees? Yes, yes. I disagree with that, but it's – There was no judgment entered? There was a judgment entered for slander title, and then the attorney's fees were – How much was that judgment for? Zero. $1 for that, but then attorney's fees were granted. $2,500 for the second issue, which was negligence in constructing the roadway, essentially. So let me move on because I only have a few more minutes on the second part of this, which is the – whether or not the complaint was still pending. I want to be clear that there was an original complaint, and then my clients filed something called a first and second amended claim, two separate documents. And if you believe that they intended to abandon the original complaint, then you have to believe that the second claim also withdrew the first claim. They filed at the same time. So if the idea is that by filing a complaint, simply filing it, that alone, that you waive the initial, then my clients filed two contradictory things at the same time. That wasn't what they were doing, and they set it on the record. We're intending to keep our original claim. We're trying to assert two new claims. They did it wrong. Absolutely, they did it wrong. The court had a hearing on it. My client said, we're going to dismiss those. We don't want to follow through with them. We're going to stick to our original. The court said, fine, but I'm going to give you days to file an amended complaint. And they never did. They never did because they were going to stick with the original. I believe, and again, we're citing kind of the same cases here. The law, I'm out. But let me just say, so the law says that if there must be. I don't have a lot of your time, so if you want to continue. Yeah. I'll just say, so what the law says is that you must show an intent to abandon the original. It's not just filing something else. It's an intent to abandon. And there was no intent from my clients to abandon the original petition. I have five more minutes at the end, so I'll cover anything additional there. But, thank you. Hold on one second, counsel. Yes, sir. I'm sorry. Just before I let you go. Justice Bowles, do you have any questions? No questions. Justice Moore, any more questions? No. All right. And obviously, counsel, you'll have your time for your vote. Okay, thank you. Mr. McCracken. Go right ahead. Thank you. Good evening. My name is John McCracken, and I represent Christine Bermois, who's the appellee in this case. May it please the Court, I'd like to begin just clarifying some of the facts that came up here. The original ingress and egress easement was platted long before the Carringtons or Bermois were involved in this. Did you say platted? Platted, yes. There's a plat that has an ingress and egress that's 40 foot wide. Is that a subdivision plat? It's a one lot plat that identifies lot one, which is the plat of the property that Mr. Carrington purchased, and there is an ingress and egress easement on that plat, and that was signed by Dorothy Crystal, and that was signed years before the Carringtons or Ms. Bermois was involved. Do you know the year of that plat? I could get that. Several years, I would have to say. It wasn't immediately before. It was several years beforehand. So it's a 40 foot wide easement, and when Ms. Bermois purchased this property, it was all grass. It was pasture, even though there would have been this platted 40 foot wide easement. It was not being used by Mr. Carrington at that time. I believe it had been a horse farm at one point, and it had been fenced in, and when she bought it, it was pasture. It was nice green pasture. Soon after she moved in, and I believe this would have been around the November of 2020 timeframe, I believe, that is when Mr. Carrington started constructing a raised gravel roadbed across this property, grading it, constructing a roadbed, and what that involved was by constructing this raised gravel roadbed, it backed up water onto her property. He had these drainage culverts put in, which there were problems with that, and it wasn't draining properly, and then he planted trees and mulch and landscape mulch all up and down this drive. So when we talk about what was platted was an ingress and egress easement. The documented issue is this private road maintenance agreement, which now I'll get into a little more of the slander of title issue. The elements of this are did the characters participate in the publication of this document, and then was there evidence of malice. We believe this is a malice way to the evidence standard, because there was evidence presented on these items. Mr. Carrington stated that he was involved in the discussion of what the terms of this document would be, and under the Gambino case that we cite, it's not required that a defendant actually record the document himself for it to be published, but so long as he causes or participates in the publication of this document. So he was involved in the discussion of what the terms of this document would be, and when we look at the right above his signature it says, recording this document, original and many copies of this document, including added signatures, shall be recorded. So he's involved in the terms of this document. He not only agrees that it be recorded, but he directs that it be recorded, and it has his name right below it, and he signs it. He did not sign it. No, he signs it twice. This document is then the testimony from the trial was that after we also, the document hasn't returned to Mr. Carrington after being recorded. The testimony showed that Mr. Carrington signed this agreement, and actually he signed it three days prior to his purchase of the house he was buying. Is there a date on that agreement? I'm sorry? Well, this is dated. This says he signed it on October 15th, 2013, and then the effective date is October 18th. The reported date is October 17th. Two days after he signed it. Right. And he does this in conjunction with his purchase of the property, okay, because he's buying this property with all it says is an ingress and egress easement, and he's trying to get this private road maintenance agreement to allow him to, you know, have a tree-lined driveway up and down Mr. Benoit's property, landscape, have a raised roadbed on this thing, when all the easement said was just ingress and egress, and he completely changed the character of it, and he bases that upon this document. So do you agree with your opposing counsel that basically the dispute was about the scope? Yes, because he has, there is, without question, an egress and egress easement, and that exists. That was planned. The dispute is what can he do with that? Well, he can't do what's provided in this document, because the reason is, let me finish up on his participation. He participated in the publication of this document. He gave it to his realtor to be included in the closing of the property, and immediately before his signature it says it shall be recorded. So you can't say he didn't have anything to do with this document being recorded. So he did. Then we get into the issue of malice on this. And, again, this document is to grant him certain rights into what he can do with this property. So the court, when we look at the Chicago title case, the issue of malice is whether or not he knew the agreement was false or made with a reckless disregard to their truth or falsity. Well, he admitted, Mr. Carrington admitted, that the private road maintenance agreement was to grant him certain rights as to how he could use this egress and egress easement. He admits that the person who owned the property over which his easement existed was Dorothy Crystal. She's the only person that could have granted these rights, these additional rights in this document. Can you testify? No, no, no. There was an affidavit. Did she pass away? There's only an affidavit submitted on her behalf. Just so we're clear, counsel is shaking his head. Okay. Yeah, there was an affidavit submitted. But she didn't sign this document. And any information that she submitted weren't precise as to what the actual terms of this were. And that would have been only an oral agreement to do something, not a recorded document. So there is nothing in this document that shows that she signed the document. Mr. Carrington knew. The only person who could grant this, and he admitted this, the only person who could grant him these rights was Dorothy Crystal. And she never signed the document. Instead, we have two signature lines here. They both have Mr. Carrington's name, and they both have his signature. So how can he say, I knew Dorothy Crystal had to be the one to grant me these rights under this document, but she never signs it? When you look at the first line of this document, it says the agreement is buying between the undersigned parcel's owners and users. Well, the owner would be Dorothy Crystal, and the user of this would be Mr. Carrington. It's never signed by the owner. So how can Mr. Carrington then present this as a document that grants him rights when he knows the person, the only person who can grant him these rights, never signed the document? So based upon that, we would say there is evidence of slander of title, and this was signed with a complete disregard to the truth. He participated in the recording of this document, and the slander of title then must be upheld. I want to now address the question of what complaints were on file at the time of trial. And what had happened is this case started with the Carrington's filing a one-count verified complaint seeking a judgment, a declaratory judgment as to a waterline easement on the southern part of the property. So the ingress and egress easement that we're talking about is on the northern part of Ms. Benoit's property. This was regarding the southern part of her property. They filed their verified complaint. Then they filed a motion for leave to amend, and they went ahead and they filed a first amended claim and a second amended claim. That then was set for motion to dismiss, and then it's at the hearing on the motion to dismiss where Mr. Carrington states on the record, he says, so we're going to withdraw the first and second claims, and we're going to refile another claim altogether. The court then confirmed Mr. Carrington's intentions, and on the record the court said, today we're set on the motion to dismiss your two claims. So when you're informing this court what's set here today is that you're withdrawing. You're voluntarily dismissing them and asking this court for leave to refile them. Mr. Carrington says yes. The court then continues, okay, your motion to dismiss your two claims is granted without prejudice. You may refile within 21 days. They never refiled anything. In fact, and the law on this is when there is an amendment that is filed that does not adopt or refer back to the prior pleadings, the earlier pleadings cease to be part of the record.  There's a small exception to that, and I'll just address it briefly, and that's where if you had a verified pleading and there's an admission made in that, well, that judicial admission can survive. That's not at play here. When we look at other courts, we cite the Morrow case. An amended pleading, complete in itself, supersedes the pleading it replaces, and the earlier pleading ceases to be part of the record. It is, in fact, abandoned and withdrawn. So when you had an original complaint filed by the Carringtons, it's when they filed their first and second claim that that original complaint is gone. That's when it was gone. And they never filed any new claims, so they didn't have any claims. There's a question about the Safeway case that's briefed, I think, where you both rely upon that case. And that case made clear that it's not the being granted leave to file an amended pleading that overrides the prior pleading. It's actually the filing of an amended pleading supersedes or withdraws the prior pleading, and that's exactly what we had in this case. When they filed their first and second claims, their original claim was gone. They then voluntarily dismissed their first and second claims, and that does not resurrect their prior claim. It was gone. And, in fact, that issue came up again, and this is briefed about the September 23, 2002 hearing. And the Carringtons had filed some motions for declaratory judgment, and there was a question of what were these motions for declaratory judgment. And the court then asked Mr. Carrington his understanding of what was going on, and the court said in their explanation of this, the court said, the only thing filed presently based upon what he, being Mr. Carrington, has stated on the record is that your counterclaim, being Benoit's counterclaim. Let me restate that. The only thing filed presently based upon what he has stated on the record is your counterclaim, being Benoit's counterclaim. So their complaint is gone. So the court's saying their complaint is gone. He then confronted Mr. Carrington, and Mr. Carrington says, well, for clarification, the opposing counsel filed a complaint, and we filed a response. And the court says, right, and now you've filed motions against his counterclaim. It's my understanding of what you're attempting to do. Mr. Carrington says, right. But what was dismissed at the last trial date was an additional admitted complaint, so that is gone. The response to his initial complaint is still in force. So he's acknowledging he does not have any complaint on file. It was dismissed. But he's still making clear that, well, I did respond to Benoit's complaint against me. That's what he's doing. It's clear. And in the court order, the court specifically asked that that part of that discussion and the ruling be included in the order. And then we have an order there that day, and it makes clear. Carrington's have not filed an amended complaint, and the only pending claim is Benoit's counterclaim. And that then is signed by both of them. They knew. There was ample evidence that the Carrington's knew that their complaint had been dismissed and that they had no pending claim when we came to trial. Yes, the Carrington's did, in fact, sign. There were both of them. And they were present in court that day, yes. So I don't know if the court wants to go into the appellate jurisdiction. We believe it's brief. We believe there's jurisdiction under 304A based upon the court reserving some further determinations as to the removal of the driveway and things of that sort. But I think that's fairly brief. And what I'd like to do then is ask the court to uphold the trial court's ruling and find the facts in this case. Thank you. Mrs. Welch, any questions? No questions. Mrs. Moore. No. Thank you, counsel. Thank you. Go right ahead, Mr. Petruschke, with your rebuttal. Thank you. I think we just saw and heard why this is an issue of law. The judge got it wrong, saying that the original complaint was gone. And my opposing counsel has gotten it wrong, because the law is very, very clear on this. When it is not the filing of an additional petition that causes an abandonment, it is the intent to abandon, as the Willis case that I cited in my brief. That's the key. They think, and the trial judge thought, the trial judge thought, that since you filed these claims, which weren't even complaints, but you filed these claims, the first thing is gone. It's gone. But it wasn't. It wasn't gone, because the law is clear that that is not the standard. The standard is whether or not it's not just the filing, it's the intent to abandon. And, by the way, in the motion for leave, my clients very clearly stated that they think the original complaint is free. What relief are you asking for? That the case needs to go back for retrial on everything, with an instruction that the slanger entitled case claim is gone. Because, as a matter of law, it was not established at the first trial.  The second issue is this whole issue of what constitutes malice. And let's address that right now, because this is a key issue, lawyer, key issue. A quote, while it has been held that implied malice is sufficient in an action for slander of title, the law in Illinois is that if a party has reasonable grounds to believe that he had legal or equitable title, or even a claim, then assertion of that claim does not amount to slander of title. What did Mr. McCracken say the basis of his malice is? The basis of his malice is the fact that Mr. Carrington stated his position. This is trial testimony. Mr. Carrington stated his position that the private road maintenance grant granted him certain rights as to how he could use the ingress and egress easement. That's 103 of the transcript that's in there. This is their brief I'm citing from. Their brief. They're admitting he had a good faith, reasonable basis. They're saying he testified to that. It's done. The slander of title is gone. My client had a reasonable basis. And, by the way, everything else in here goes to that because nobody has specified that's who the person or entity that filed the roadway maintenance agreement. Slander of title is, again, a recording. An affidavit of Dorothy Crystal was introduced showing that she knew and consented to the Carrington's desire to build a road. Everyone agrees. In fact, she didn't sign it. We have evidence at trial. Admit it. This court had no basis for finding slander of title. The definitions of Cliff Grunner were admitted at trial. Cliff Grunner testified that the private road maintenance agreement accurately describes the oral agreements with the Carrington's. No one in this case, including Mr. McCracken, is telling me the oral agreement to build a road is wrong. So let's address the one case he has. The one case that he believes establishes the right to imply malice, and that is the Gambino case. Let's be clear about Gambino. It's the trust and trust beneficiaries brought quiet title and slander of title action against certain parties. The court in that case meant the trial. The appellate court says the trial court found malice on each one of those parties that participated in it. And what was the fraud? The fraud was a forged document, for God's sake. It was a forged document. And that forged document was filed by the attorney and his own title company. He's the sole lender of the title company. And the court specifically said we have evidence of malice from that party, from the title company, and from Boulevard. So each one of them participated maliciously in the slander of title. Certainly there's a slander of title there. In this case, my client agreed with everyone that he had rights, and everyone that has anything to do with it said he had the rights. And the document was screwed up. The document was messed up. It's a technical error. That's it. That's not slander of title. Anything else? Justice Walsh, do you have any questions? We have no questions. Justice Moore. All right. Thank you, counsel. Thank you so much. Counsel, we will take the matter under advisement. And we will issue an order in due course.